**CONSOLIDATED RAIL CORPORATION,**
**Petitioner,**

v.

**Francis P. DICELLO, Trustee for Delaware and Hudson Railway Company, Respondent.**

**Civ. A. No. 90–03.**

Special Court, Regional Rail Reorganization Act.

Nov. 1, 1990.

Laurence Z. Shiekman, Stephen J. Cipolla, Michael A. Ceramella, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for petitioner Consolidated Rail Corp.

Charles H. White, Jr., Richard E. Lear, Hazel & Thomas, P.C., Washington, D.C., for respondent Francis P. Dicello, trustee.

Terrence M. Hynes, Loreen M. Marcil, Sidley & Austin, Washington, D.C., for intervenor Canadian Pacific Ltd.

Fritz R. Kahn, Verner, Liipfert, Bernhard, McPherson and Hand, Chartered, Washington, D.C., for intervenor State of N.Y. Dept. of Transp.

Alan E. Kleinburd, Michael F. Hertz, Tracy J. Whittaker, U.S. Dept. of Justice, Washington, D.C., for the U.S. as amicus curiae.

Before WISDOM, Presiding Judge, and GASCH and GREEN, Judges.

WISDOM, Presiding Judge:

Consolidated Rail Corporation ("Conrail") petitions this court seeking an injunction against Francis P. Dicello, trustee of the Delaware and Hudson Railway Corporation ("D & H"), and a stay in the bankruptcy proceedings of D & H. Conrail seeks to prevent the bankruptcy court from declaring that D & H has the right to operate its trains over a thirty-mile section of Conrail track running north from Buffalo to the Suspension Bridge at Niagara Falls, New York under a 1979 operating rights agreement between Conrail and D & H. We find the petition to be within our jurisdiction, but deny the relief requested by Conrail.

### I

D & H bases its right to use this thirty-mile section of track on an additional designation made to D & H by the United States Railway Association ("USRA") in 1976.[1] In pertinent part, the additional designation offered D & H:

> Overhead trackage rights from Jefferson Jct., Pa. (MP–189.9) to Buffalo (MP–422.-4) ..., including the right to: ...
>
> (iii) interchange with all railroads (including [Conrail]) operating or interchanging at the Buffalo terminal area....

41 Fed.Reg. 8,849 (1976).

D & H accepted the designation. Pursuant to an order of this court, conveyance documents were prepared which, in relevant part, granted D & H:

> ... overhead trackage rights including the rights to use Bison Yard and to interchange at Buffalo with other railroads in that part of the Real Properties known as (E & L's) Buffalo Division which extends from Milepost 331.8 at Hornell to Milepost 418.0 at Buffalo Union in the State of New York, Counties of Steuben, Alleghany, Livingston, Wyoming, Gennessee and Erie, and is identified as [USRA] Line Code 6401 ...

From the outset, Conrail and D & H have disagreed over the geographic scope of the rights conveyed in the 1976 designation and in the conveyance documents. Because of this disagreement, the parties explicitly excluded the Conrail lines from Buffalo to the Suspension Bridge from their 1979 agreement spelling out the rights conveyed to D & H by the USRA.[2] To resolve their dispute, the parties submitted the disagreement over the geographic scope and the nature of D & H's rights under the 1976 designation to binding arbitration before the USRA.

In 1982, the arbitrator ruled that the phrase "Buffalo terminal area" in the 1976 designation encompassed an area from the Tifft Terminal in South Buffalo to the Suspension Bridge at Niagara Falls.[3] The arbitrator further ruled that the 1976 designation did not give "D & H the right to operate its equipment with its own crews anywhere it wished on those lines"[4]; rather it gave D & H the right to interchange traffic in a reasonable and efficient manner with other carriers in the Buffalo terminal area. The designation left the "details [carrying out the interchange right]—interchange point(s), the equipment, crews and

---

**1.** The Rail Amendments of 1976 gave USRA the right to make additional designations modifying the Final System Plan. Pub.L. No. 94–555, Title II, § 201, 90 Stat. 2616 (codified at 45 U.S.C.A. § 718(d)(3) (West 1988)).

**2.** "The parties have been unable to agree upon the lines to be included in D & H's operating rights beyond Buffalo 'FW' (MP 422.4) and shall make a continuing effort to resolve open questions concerning these lines." We cannot accept D & H's contention that this statement refers only to differences as to which Conrail lines D & H could use. When the USRA arbitrator was asked to resolve this dispute, his ruling addressed D & H's right to use any of the Conrail lines between Buffalo and Niagara Falls.

**3.** *Delaware & H. Ry. Co. v. Consolidated Rail Corp.*, slip op. at 24 (Oct. 4, 1982) (Siegel, Arb.) [USRA Arbitration].

**4.** *Id.* at 25.

facilities to be used and, to some extent, fees and charges—to good faith negotiations between the parties." [5] If the parties could not agree to a reasonable and efficient method of effecting the interchange right, then the arbitrator ruled that the parties should submit the dispute to binding arbitration before the American Arbitration Association.[6] Neither party appealed the decision of the arbitrator.

In 1988, D & H filed for bankruptcy. To complete the reorganization of D & H, the trustee has arranged, and the bankruptcy court has approved, the sale of substantially all of the rail assets of the D & H estate to a subsidiary of Canadian Pacific Limited. To consummate the sale, the trustee filed a motion with the bankruptcy court requesting authority to assume and assign the rail assets of D & H. As part of the motion, the trustee asked the bankruptcy court to declare that the 1979 agreement between Conrail and D & H presently provides D & H the right to operate, using its own engines and crews, over the Conrail lines between Buffalo and the Suspension Bridge.[7] It is this declaration, and not the assignment, of the 1979 agreement that Conrail has petitioned us to enjoin. The trustee unquestionably has the authority to assume and assign the executory contracts of the estate.

**5.** USRA Arbitration at 25.

**6.** *Id.; see also* 41 Fed.Reg. 8,849 (1976) ("All of the designations include the right for either D & H or [Conrail] to submit for binding arbitration to the American Arbitration Association any disputes regarding the reasonableness of terms for the provision of services pursuant to this designation....").

**7.** Trustee's Amended and Restated Motion for Authority to Assume and Assign Certain Executory Contracts at 3, *In re Delaware and Hudson Railway Company,* No. 88–342 (Bankr.Del. filed Oct. 1, 1990).

**8.** Pub.L. No, 93–236, 87 Stat. 986 (codified as amended at 45 U.S.C.A. §§ 701–797m (West 1988)).

**9.** Section 209(b) (codified at 45 U.S.C.A. § 719(b) (West 1988)).

**10.** Section 209(e) (codified at 45 U.S.C.A. § 719(e) (West 1988)).

**11.** Conrail also suggests that we have jurisdiction under section 209(e)(1)(C) of the RRR Act. That section provides:

## II

Conrail's petition presents two issues: (A) does this court have jurisdiction to grant the relief requested by Conrail; and (B) if this court has jurisdiction, do the facts justify the relief requested by Conrail? We begin with the jurisdictional issue.

### A. *Jurisdiction*

■ The Regional Rail Reorganization Act of 1973 [8] ("RRR Act") created the Special Court [9] and gave it original and exclusive jurisdiction over a number of issues arising out of the Final System Plan ("FSP") formulated by USRA.[10] Section 209(e) of the RRR Act [11] grants the Special Court jurisdiction over:

... any action, whether filed by any interested party or initiated by the special court itself, to interpret, alter, amend, modify, or implement any of the orders entered by such court pursuant to Section 743(b) [Rail Act § 303(b)] of this title in order to effect the purposes of this chapter òr the goals of the final system plan.[12]

Conrail argues that the 1979 agreement, by its terms,[13] does not include the section

Notwithstanding any other provision of law, any civil action ... challenging the legality of any action of [USRA], or any failure of [USRA] to take any action, pursuant to authority conferred or purportedly conferred under [the RRR Act] ... shall be within the original and exclusive jurisdiction of the special court.

Section 209(e)(1)(C) (codified at 45 U.S.C.A. § 719(e)(1)(C) (West 1988)). Because we find that we have jurisdiction under section 209(e)(2), we do not address our jurisdiction ụnder section 209(e)(1)(C).

**12.** Section 209(e)(2) (codified at 45 U.S.C.A. § 719(e)(2) (West 1988)).

**13.** Conrail cites section 1.01 of the contract which provides:

The parties have been unable to agree upon the lines to be included in D & H's operating rights beyond Buffalo "FW" (MP 422.4) and shall make a continuing effort to resolve open questions concerning these lines.

of track from Buffalo to Niagara Falls; therefore, to make the declaration requested by the trustee the bankruptcy court would have to go beyond the terms of the 1979 agreement and impinge on this court's jurisdiction. The trustee responds that the right he seeks is clear from the 1979 agreement and that he has asked the bankruptcy court to resolve what is essentially a contract dispute not arising under section 209(e)(2) of the RRR Act.

The trustee argues that language in the 1979 agreement gives D & H the right to operate its own trains and crews over the Conrail lines running between Buffalo and Niagara Falls without regard to the rights conveyed to D & H under the 1976 designation. In the trustee's opposition, the trustee relies on section 2.01:

> D & H shall have the right to interchange cars with other carriers ... and to operate onto or off other carriers at and within the Buffalo, Black Rock and Niagara Falls, New York terminal areas....[14]

Filling in some of the language the trustee omitted, section 2.01 provides:

> D & H shall have the right to interchange cars with other carriers, directly or through switching tariffs or haulage arrangements and to operate onto or off other carries from points on the *Joint Lines* between Binghamton and Buffalo, New York; Attica and Groveland, New York; at and within the Buffalo, Black Rock and Niagara Falls, New York, terminal areas.... (emphasis added).

Under this section, D & H has rights only with respect to the "Joint Lines" in each of these areas. As Exhibit A to the contract specifies, neither of the Conrail lines between Buffalo and Niagara Falls

are included within the definition of "Joint Lines".[15]

Given the language of the contract, we can find only two potential justifications for implicitly including the Conrail lines between Buffalo and the Suspension Bridge within the 1979 agreement. The parties, despite the language of section 1.01, may have intended all of the lines included within the 1976 designation to be covered by the terms of the agreement. Or, the parties may have intended to incorporate the USRA arbitrator's findings concerning the geographic scope of the 1976 designation into the 1979 agreement. Either argument necessarily depends on interpreting the phrase "Buffalo terminal area" in the 1976 designation to include the Conrail lines from Buffalo to the Suspension Bridge.

Thus, the 1979 agreement does not explicitly grant D & H any rights over Conrail lines between Buffalo and Niagara Falls. To make the declaration requested by the trustee, the bankruptcy court would have to find two things: (1) that D & H's right to interchange traffic in the "Buffalo terminal area" under the 1976 designation included the right to interchange over Conrail lines between Buffalo and Niagara Falls; and (2) that the 1979 agreement implicitly incorporated the areal extent of the designation. The first finding requires an interpretation of the phrase "Buffalo terminal area" in the FSP, in the light of the more narrow language in the actual conveyance document. The first finding is, therefore, within our exclusive jurisdiction.[16] The second is a question of contract interpretation that we leave to the bankruptcy court.[17]

Because the motion of the trustee would require an interpretation of the FSP, we

---

14. Trustee's Memorandum in Opposition at 6.

15. The USRA identified the Conrail lines running between Buffalo and Niagara Falls as USRA Line Codes 0603A and 0603B. 41 Fed. Reg. 8,849 (1976). Exhibit A to the 1979 agreement identifies the Joint Lines by their USRA Line Code. No reference is made in Exhibit A to USRA Line Codes 0603A and 0603B.

16. *Cf. Consolidated Rail Corp. v. Pittsburgh & L.E.R.R.*, 459 F.Supp. 1013, 1017 (Sp.Ct.R.R.R.A. 1978) ("It suffices to sustain our jurisdiction here that ConRail's complaint raises substantial questions with respect to the interpretation of the FSP and our conveyance orders themselves and not merely of the operating rights grant and the implementing agreement.")

17. *Id.*

hold that we have jurisdiction to hear Conrail's petition.

## B. *Do the Facts Warrant Relief?*

■ To obtain the relief requested, Conrail must show: (1) a probability of success on the merits; (2) irreparable injury to Conrail; (3) the balance of hardship between the parties favors Conrail; and (4) an injunction would be consistent with the public interest.[18] We need not address each of these elements because we find that Conrail has failed to establish a probability of success on the merits.

The issue presented to this court by Conrail's petition is: What rights the 1976 designation convey to D & H over the Conrail lines between Buffalo and the Suspension Bridge? Conrail argues that the 1976 designation gave to D & H no rights over this section of Conrail track. We note that USRA rejected Conrail's position in its arbitration decision. While ordinarily this would preclude Conrail from raising the issue before us,[19] Conrail argues, citing language from *Consolidated Rail Corporation v. State of Illinois,*[20] that arbitration between the parties interpreting the FSP does not preclude the parties from asking this court to find a contrary interpretation. We do not find it necessary to address the *res judicata* effects of a final arbitration order in this situation,[21] because we agree with the interpretation given the 1976 designation by USRA.

As for the geographic scope of D & H's rights, the 1976 designation conveyed to D & H the right "(iii) to interchange with all railroads (including [Conrail]) operating or interchanging at the Buffalo terminal area...."[22] The contemporaneous records of USRA indicate that USRA intended the phrase "Buffalo terminal area" to encompass an area running from "Niagara Jct. [and the Suspension Bridge] to and including Tifft Terminal [in South Buffalo]."[23]

As for the nature of D & H's rights, for the reasons given in the USRA Arbitration[24] we interpret the 1976 designation to give D & H the right to interchange with other carriers in the Buffalo terminal area in a reasonable and efficient manner. The designation does not explicitly give D & H the right to use its own trains and crews to effect the interchange right; it leaves the parties free to agree to any reasonable and efficient method of effecting D & H's interchange right. Under our interpretation of the 1976 designation, the parties may agree to let D & H use its own trains and crews, or may agree to use switching tariffs and haulage arrangements to accomplish the interchanges. If the parties have not agreed, and cannot agree, to reasonable terms for accomplishing the interchange, either party may seek arbitration before the American Arbitration Association under the terms of the designation.[25]

Conrail has failed to show a probability of success on the merits as to the proper interpretation of the geographic scope of the 1976 designation.

In the exercise of its jurisdiction, the court has defined the nature and the extent of the rights conveyed to D & H under the 1976 designation. We leave to the bankruptcy court the contract issue of whether

---

**18.** *Consolidated Rail Corp. v. State of Illinois,* 423 F.Supp. 941, 951–52 (Sp.Ct.R.R.R.A.1976), cert. denied, 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977).

**19.** *See, e.g., Schattner v. Girard, Inc.,* 668 F.2d 1366, 1368–69 (D.C.Cir.1981).

**20.** "The State of Illinois and Conrail have no power to agree by arbitration to a review of the [FSP] or to a rewriting of USRA's determinations." 423 F.Supp. at 952.

**21.** We note that the Court has created an exception to the preclusive effects of a final arbitration decision in the Title VII area because of the central role given courts in enforcing Title VII.

*See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *see also Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). Because we agree with the findings of the arbitrator, we need not decide whether Congress intended to create a similar role for us in interpreting the FSP.

**22.** 41 Fed.Reg. 8,849 (1976).

**23.** *See* USRA Arbitration at 9–10.

**24.** *See* USRA Arbitration at 15–22.

**25.** 41 Fed.Reg. 8,849 (1976).

the 1979 agreement implicitly incorporated the areal extent of the 1976 designation.

### III

By its 1976 designation, the USRA conveyed to D & H the right to interchange with other carriers in the Buffalo terminal area. The details implementing that right were left to the agreement of the parties; the parties could agree to use Conrail's trains and crews, or to use those of D & H, or to use some other method, to implement the right. Given our interpretation of the 1976 designation, the trustee's motion, asking the bankruptcy court to determine whether the parties intended to implement D & H's rights under the 1979 agreement, implicates neither an action of USRA nor an order of this court. We deny the relief sought by Conrail.